UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RICHARD ALLEN BOWEN, | ) |
| | ) |
|     *Plaintiff* | ) |
| | ) |
| v. | )   No. 1:14-cv-451-JHR |
| | ) |
| CAROLYN W. COLVIN, | ) |
| *Acting Commissioner of Social Security,* | ) |
| | ) |
|     *Defendant* | ) |

### *MEMORANDUM DECISION*[1]

This Child's Disability Benefits ("CDB") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy.[2] The plaintiff seeks remand on the bases that the administrative law judge erred in determining his mental residual functional capacity ("RFC") and in relying on the so-called "Grid," the Medical-Vocational Rules in Appendix 2 to 20 C.F.R. Part 404, Subpart P, to find him capable of performing work. *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 14-1) at 2-7. At oral argument, the plaintiff's counsel clarified that he did not argue that the administrative

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on September 18, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 18.

[2] To be entitled to Child's Disability Benefits on the earnings record of a wage earner, a claimant must demonstrate that he or she is the insured person's child, is dependent on the insured, is unmarried, and, if over age 18 and not eligible for benefits as a full-time student, has a disability that began before age 22. *See* 20 C.F.R. § 404.350; *see also, e.g., Starcevic v. Commissioner of Soc. Sec.,* No. 08-13128, 2009 WL 2222631, at *6 (E.D. Mich. July 22, 2009) (claimant applying for child's disability benefits must demonstrate that she was disabled before she turned 22 "and was continuously disabled from the date of her twenty-second birthday through the date that she applied for benefits").

1

law judge erred in relying on the Grid with respect to the RFC actually found but, rather, that the administrative law judge should have assessed additional limitations that would have precluded sole reliance on the Grid. I find no reversible error in the administrative law judge's RFC determination. Accordingly, I affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of organic mental disorder/borderline intellectual functioning and personality disorder/intermittent explosive disorder, Finding 3, Record at 12; that he had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: due to psychological impairments, he could understand and remember simple instructions, could execute simple tasks on a consistent schedule to complete an eight-hour day/five-day week (or an equivalent work schedule), could interact with coworkers and supervisors, could work in public areas but could not interact with the general public, and could adapt to occasional changes in the routine workplace, Finding 5, *id*. at 14; that, considering his age (21 years old, defined as a younger individual, on his alleged disability onset date, January 1, 2011), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 16; and that he, therefore, had not been disabled from January 1, 2011, through the date of the decision, June 13, 2013, Finding 11, *id*. at 17. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The administrative law judge stated that his mental RFC determination was supported by the opinions of agency nonexamining consultants Lewis F. Lester, Ph.D., David O. Hill, Ph.D., and David R. Houston, Ph.D., the opinions of agency examining consultants Gary Rasmussen, Ph.D., and Donald Devine, Ph.D., treatment notes from providers, including Kennebec Behavioral Health ("KBH"), function reports, and the longitudinal record. *See* Record at 16. He added:

> The preponderance of objective evidence, including psychological evaluations and clinical reports, when considered in view of the [plaintiff's] statements of daily activities[,] do[es] not support the purported level of disability that he professes. While it is true that organic and personality-related mental health symptoms impose certain limitations, there is nothing in the record to undermine the conclusion that [he] retains the capacity for a range of simple work as set forth in the assigned RFC.

*Id.*

The plaintiff challenges the administrative law judge's assessment that nothing in the record undermined the conclusion that he retained the capacity for simple work, arguing that the administrative law judge ignored or minimized the import of both contrary medical opinion evidence and other evidence of record that he contends corroborated his disabling work-related mental imitations. *See* Statement of Errors at 3-7.

With respect to medical opinion evidence, he points to:

1. The opinion of agency nonexamining consultant Brian Stahl, Ph.D., that he met the criteria of Listing 12.02, Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), in part on the strength of the April 2011 report of an employer, Nitram, that no one could work with him, one female employee reported feeling unsafe alone with him, he "had an extremely difficult time reading, writing or even understanding what was needed when it was read to him[,]" he "was very rude to our office personnel[,]" and "[h]is hygiene was also a major issue." *Id.* at 3-4 (quoting Record at 476) (emphasis omitted);

2. Dr. Rasmussen's statements that he could not be expected to independently manage any awarded funds in his own interest and that testing and a records review "suggest[ed] that his skills of every day living, including his capacity to manage money, [are] in the deficient range." *Id.* at 3 (quoting Record at 658);

3. Dr. Rasmussen's opinion that his language deficits negatively impacted his social judgment and might lead to difficulties with authority figures such as supervisors and negatively impact his capacity to be a reliable employee. *See id.* at 6; Record at 658;

4. The finding of treating physician Roy Miller, M.D., that he would need help managing his benefits because of difficulty handling money. *See* Statement of Errors at 6; Record at 857;

4

   5. Dr. Lester's findings that he had a marked limitation in interacting with the general public and a moderate limitation in ability to get along with coworkers and peers, which he argues were corroborated by records of his employment not only at Nitram, but also at Applebee's. *See* Statement of Errors at 7; Record at 734; and

   6. Dr. Devine's finding that his IQ scores were in the low to borderline range, with his working memory in the first percentile, and that "[a]wareness of this limitation may be necessary if he returns to school or is placed on a job." Statement of Errors at 3 (quoting Record at 811).

   He adds that the administrative law judge ignored or minimized the import of other evidence corroborating his allegation that he had disabling work-related mental limitations in attempting to perform even simple work, including:

   1. Records detailing his deficits when he actually attempted to work at Nitram in April 2011 and at Applebee's, with vocational assistance from Goodwill Industries of Northern New England ("Goodwill"), in June 2008. *See id.* at 7; Record at 475-76; 704-09. At oral argument, his counsel contended that these records comprised, in effect, the best evidence available of his RFC and should have informed the administrative law judge's resolution of conflicts in the medical opinion evidence;

   2. Evidence that, when he was taken out to lunch as part of an occupational therapy consultation by Gallant Therapy Services ("Gallant") on September 24, 2010, he required assistance ordering because of difficulty reading the menu. *See* Statement of Errors at 5; Record at 748;

      3.      A notation in Goodwill's 2008 employment assessment that he was illiterate, to the point that his reading and writing were not evaluated. *See* Statement of Errors at 6; Record at 706; and

      4.      Recent KBH notes that the administrative law judge acknowledged reflected ongoing impulse and anger control problems. *See* Statement of Errors at 5-6; Record at 12.

In her brief, and through counsel at oral argument, the commissioner contended that the administrative law judge permissibly resolved conflicts in the medical opinion evidence, identifying substantial evidence in support of his RFC determination. *See* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 16) at 2-12. I agree.

At bottom, this is a case in which the evidence in certain material respects was conflicting, and the administrative law judge resolved those conflicts, as he was obliged to do. *See, e.g., Rodriguez,* 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."). While he did not address every piece of evidence at odds with his determination, the plaintiff fails to show any harmful error in that failure.

First, the RFC determination is directly supported by the 2011 opinions of Drs. Hill and Houston, the most recent mental RFC opinions of record, which the administrative law judge gave "strong weight." Record at 15, 90-92, 838. It is also directly supported by the 2008 opinion of Dr. Lester. *See id*. at 735. It is supported in part by the 2008 opinion of Dr. Rasmussen, who concluded that, despite his "language deficits" and "social and emotional immaturity[,]" the plaintiff "appear[ed] to be able to perform such basic job related psychological skills as communication, understanding, and following instructions" and had no deficits in his capacity to

concentrate or memorize, *id*. at 658, and the 2011 opinion of Dr. Devine, who concluded that the plaintiff might "have difficulty remembering directions on the job and sustaining concentration and perseverance on jobs that require a rapid pace[,]" that his ability to interact with the public was "probably adequate[,]" although it might be complicated by a speech impediment, and that there was "no reason to believe that he would have a problem getting along with coworkers or his supervisors[,]" *id*. at 811.

Second, the administrative law judge either discussed the contrary evidence to which the plaintiff points or relied on the opinions of experts who had considered it.

He expressly considered the Stahl opinion, which relied heavily on the Nitram report, rejecting it on the basis that, subsequent to the Stahl assessment, Dr. Hill performed a comprehensive analysis, and no opinions or treatment records postdating the Hill analysis contradicted it. *See id.* at 15.  He observed that KBH treatment notes dated in 2012 and 2013 only further supported the Hill opinion, indicating that the plaintiff sustained a part-time work schedule at Goodwill Industries for more than a year, maintained his appointments, behaved pleasantly and cooperatively with his counselor, and continued his previous social and daily activities. *See id*. at 15-16.

The commissioner concedes that the administrative law judge did not expressly discuss the portions of the Rasmussen opinion on which the plaintiff relies. *See* Opposition at 4, 6.

Nonetheless, as she points out, *see id.* at 5, the plaintiff fails to explain how the lack of a restriction on the capacity manage funds would have been material, thus falling short of demonstrating entitlement to a remand on that basis, *see, e.g., Hatt v. Social Sec. Admin. Comm'r*, No. 1:13-cv-00335-NT, 2014 WL 4411600, at *4 (D. Me. Sept. 5, 2014) (no basis for remand when claimant "proffer[ed] no explanation of the necessary change in the outcome of her

application" if the administrative law judge had adopted a statement in an agency examining consultant's report). In any event, there is conflicting evidence of record on the point. While the Rasmussen finding was corroborated by the plaintiff's mother, *see* Record at 462, Drs. Devine and Houston deemed him capable of managing his funds appropriately, *see id*. at 87, 811.

While the administrative law judge did not address the portion of the Rasmussen opinion stating that the plaintiff's language deficits might lead to difficulties with authority figures such as supervisors and negatively impact his capacity to be a reliable employee, *see id*. at 658, he relied on opinions of Drs. Hill and Houston, who had the benefit of review of the full record as of the date of their review in 2011, including the Rasmussen opinion, and yet concluded that the plaintiff had, at most, a deficit in his ability to interact with the general public, *see id*. at 86, 91, 807, 838.

The administrative law judge addressed the Miller finding, according it no evidentiary weight because it was merely a check-off form asserting the sole proposition that the plaintiff was unable to manage money in his own interests because he needed help from his mother to pay his bills, which the administrative law judge deemed "unsubstantiated." *Id*. at 16. As the commissioner acknowledges, *see* Opposition at 9, the Miller opinion was not wholly unsubstantiated. It was corroborated by the plaintiff's mother's report. *See* Record at 462. Nonetheless, any error in describing the Miller finding as "unsubstantiated" is harmless, both because the administrative law judge relied on substantial evidence that the plaintiff did have the capacity to manage his own funds, *see id*. at 87, 811, and because the plaintiff fails to explain how the omitted restriction, if adopted, would have precluded sole reliance on the Grid, *see* Statement of Errors at 4-7.

With respect to Dr. Lester's findings that the plaintiff had a marked limitation on interacting with the general public and a moderate limitation in his ability to get along with

coworkers and peers, Dr. Lester translated those limitations, for purposes of assessing the plaintiff's mental RFC, into an inability to interact with the public but an ability to interact with coworkers and supervisors in a normal work setting. *See* Record at 735. This, in turn, was consistent with the administrative law judge's mental RFC finding. *See* Finding 5, *id*. at 14.

Finally, as the commissioner points out, *see* Opposition at 6-7, the administrative law judge expressly considered Dr. Devine's IQ test results but concluded that they did not compel a finding of greater limitations than those assessed, *see* Record at 15. This conclusion is supported by substantial evidence. Dr. Hill, who had the benefit of review of the Devine report and whose opinion the administrative law judge gave great weight, took into account Dr. Devine's concerns about memory and the performance of fast-paced work by limiting the plaintiff to the performance of only simple tasks. *See id*. at 838.

Turning to the other evidence of record on which the plaintiff relies, counsel for the commissioner acknowledged at oral argument that the administrative law judge did not separately discuss the Nitram and Applebee's evidence. Yet, as she indicated, Dr. Lester discussed the Applebee's evidence, which he summarized as disclosing that the plaintiff had "[g]ood attendance, drove himself[,]" "[d]id not seem motivated[,]" was "impatient toward [the] end of 3 [hour] shift[,]" was "[d]istractible[,]" did "[g]enerally good quality work, but did drop off at end of shift," was "able to work independently[,]" was "hard to understand at times[,]" had an "[a]dequate memory[,]" and had a "passive" attitude toward work. *Id*. at 731 (emphasis omitted). In addition, as she notes, *see* Opposition at 8, in articulating his reasons for rejecting the Stahl opinion, the administrative law judge recognized that it was based on the Nitram report, *see* Record at 15, thereby indirectly addressing that evidence.

9

The administrative law judge also considered the plaintiff's "professed reading inability," noting that, despite it, "a KBH counselor reported [in 2012] that the plaintiff was 'able to read and write and demonstrate[d] a capacity to provide informed consent based on vocabulary, sentence structure and fund of knowledge.'" *Id*. at 13 (quoting *id*. at 868, 910, 916, 920, 953, 964) (citation omitted). This was substantial evidence in support of the omission of specific reading/writing limitations. While the administrative law judge did not discuss the contrary evidence contained in the reports to which the plaintiff points (the Gallant report and the 2008 Goodwill employment assessment), he relied on the opinions of agency nonexamining consultants who had reviewed them. Dr. Houston considered the Gallant report, *see id*. at 86, and Dr. Lester considered the 2008 employment assessment, *see id*. at 731. In addition, Dr. Hill considered the plaintiff's statement that he was unable to follow written instructions well. *See id*. at 837.[3]

Moreover, as the commissioner argues, *see* Opposition at 13-14 n.5, even if the plaintiff had been found illiterate, that would not have precluded reliance on the Grid, *see* Grid §§ 201.00(i) ("While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance. . . . Thus, the functional capability for a full range of sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age 18-44 even if they are illiterate or unable to communicate in English."); 202.00(g) (same for individuals age 18-49 who are limited to light-work jobs).

---

[3] The plaintiff also argues that the recommendations made at the end of the Gallant report "are an unequivocal indication that [his] impairment more than marginally reduce[s] his relevant occupational base." Statement of Errors at 5. However, he does not explain how. *See id*.

10

As the plaintiff points out, *see* Statement of Errors at 5-6, the administrative law judge acknowledged that KBH notes reflected ongoing impulse and anger control problems, *see* Record at 12. However, the plaintiff fails to explain what specific limitations were omitted from the administrative law judge's mental RFC finding and how those would have precluded reliance on the Grid. *See* Statement of Errors at 5-6. In any event, the administrative law judge supportably determined that the KBH notes did not warrant greater limitations than found by Dr. Hill, explaining that, despite the plaintiff's ongoing issues, the KBH records "show[ed] the [plaintiff] as maintaining a part-time work schedule for more than a year through Goodwill Industries; maintaining his appointments; behaving pleasantly and cooperatively with the counselor[;] and continuing his previous social and daily activities." Record at 15-16 (citations omitted); *see also, e.g., id*. at 859, 868, 908, 910, 916, 920, 953, 958, 962, 964.

This was a permissible resolution of conflicts in the evidence. *See, e.g., Anderson v. Astrue,* No. 1:11-cv-476-DBH, 2012 WL 5256294, at *4 (D. Me. Sept. 27, 2012) (rec. dec., *aff'd* Oct. 23, 2012) ("While an administrative law judge is not competent to assess a claimant's RFC directly from the raw medical evidence unless such assessment entails a common-sense judgment, he or she is perfectly competent to resolve conflicts in expert opinion evidence regarding RFC by, *inter alia,* judging whether later submitted evidence is material[.]") (citation and internal quotation marks omitted).

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 28th day of September, 2015.

                                                                /s/  John H. Rich III
John H. Rich III
United States Magistrate Judge